UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS MARZOUQ,

    Plaintiff,

v.

U.S. DEPARTMENT OF EDUCATION,

    Defendant.

_____/

Case No. 18-13616
District Judge Victoria A. Roberts
Magistrate Judge Mona K. Majzoub

**<u>OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS [ECF No. 7]</u>**

### I.    INTRODUCTION

Douglas Marzouq brings this action against the United States Department of Education (the "Department"), alleging that it violated the Fair Credit Reporting Act ("FCRA") by failing to properly investigate Marzouq's claims that federal student loans were fraudulently obtained in his name; the Department reported the allegedly fraudulent loans to credit reporting agencies, and Marzouq maintains that his credit score was harmed as a result.

The Department moves to dismiss under Federal Rule of Civil Procedure 12(b)(1); it says that this Court does not have subject matter jurisdiction under the doctrine of sovereign immunity. Marzouq says that Congress waived the United States' sovereign immunity against civil suits for damages in the FCRA.

The Court finds that the FCRA does not contain a clear waiver of sovereign immunity that would subject the United States to civil suits for damages; the Court does not have subject matter jurisdiction over Marzouq's claim.

The Department's motion to dismiss is **GRANTED**.

## II.  BACKGROUND

Marzouq lost his wallet in 2012; in 2016, after obtaining his credit report, he noticed that several fraudulent student loans were reported. In early 2017, Marzouq sent a letter to Equifax, the credit reporting agency, disputing the reported loans. Equifax opened an investigation and forwarded Marzouq's inquiry to the Department. On April 2, 2017, Marzouq received the results of Equifax's investigation—the Department allegedly did not remove the fraudulent loans from Marzouq's credit report. Marzouq says the Department's failure to correct the errors in his credit file caused him to suffer "credit and emotional damages," as well as "undue stress and anxiety."

## III.  STANDARD OF REVIEW

"A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at 194 (2d ed. 1990). The Plaintiff bears the burden to prove jurisdiction. *See generally RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134–35 (6th Cir. 1996); *see also Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). "When considering a motion to dismiss for lack of subject matter jurisdiction, this Court may look beyond jurisdictional allegations in the complaint and the Court may consider whatever evidence the parties submit." *Fairport Int'l.*

*Exploration, Inc. v. Shipwrecked Vessel Known as THE CAPTAIN LAWRENCE*, 105 F.3d 1078, 1081 (6th Cir. 1997), vacated on other grounds, 523 U.S. 1091, 118 S.Ct. 1558, 140 L.Ed.2d 790 (1998).

## IV.  ANALYSIS

### A.  Sovereign Immunity Generally

The United States Supreme Court instructed that sovereign powers have "traditionally enjoyed" a "common-law immunity from suit." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Indeed, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity is "jurisdictional in nature." *Id.* The "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.*

Importantly, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996). This means that a purported waiver cannot be ambiguous; an ambiguity "exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *Robinson v. United States Dept. of Educ.*, 917 F.3d 799, 802 (9th Cir. 2019) (citing *FAA v. Cooper*, 566 U.S. 284, 290-91 (2012)). "Sovereign immunity, in short, can only be waived by statutory text that is unambiguous and unequivocal." *Id.* The clear textual waiver rule "ensures that Congress has specifically considered . . . sovereign immunity and intentionally legislated on the matter." *Sossamon v. Texas*, 563 U.S. 277, 290 (2011). It also "ensure[s] Congress does not, by broad or general language, legislate on a sensitive

3

topic inadvertently or without due deliberation." *Id.* at 291. "Any ambiguities in the statutory language are to be construed in favor of immunity." *FAA v. Cooper*, 566 U.S. 284, 290 (2012).

"The plaintiff bears the burden of showing that the government has waived sovereign immunity at the motion to dismiss stage." *Id.* (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)).

**B. The FCRA Does Not Clearly Waive Sovereign Immunity Against Civil Liability**

The Department says that the FCRA does not contain a clear waiver of sovereign immunity against civil liability; it maintains that Congress' use of the term "person" in the civil liability section does not clearly encompass the United States, notwithstanding the statute's definitional section. Marzouq says that the FCRA's definitional section—which includes in its definition of "person" any "government, governmental subdivision or agency"—ends the inquiry; he says the section is a clear waiver of the Department's sovereign immunity.

The Court agrees with the Department. Although the FCRA includes "any government" in its general definition of a person, Congress did not clearly waive the federal government's sovereign immunity against enforcement actions; the Court finds that—looking at the statute as a whole—it is unclear whether Congress meant to subject the United States to civil liability under the FCRA.

The Sixth Circuit has not addressed whether the FCRA contains a waiver of sovereign immunity against suits for damages; the Fourth and Ninth Circuits held that the FCRA does not contain an explicit waiver of sovereign immunity, while the Seventh

4

Circuit held that the FCRA does contain a waiver. No other circuits have considered the issue.

This Court deems the reasoning of the Fourth and Ninth Circuits most persuasive; we follow their reasoning and ultimately reach the same conclusion—that the FCRA does not contain an unambiguous, unequivocal waiver of sovereign immunity against suits for damages.

With respect to civil liability, the FCRA mandates that "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for actual damages, costs, and attorney's fees. 15 U.S.C. § 1681o. The statute also makes punitive damages available in the event of a willful violation. 15 U.S.C. § 1681n. The FCRA generally defines a "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

Because the FCRA defines "person" to include any government and the statute makes "any person" who willfully or negligently violates its requirements liable for damages, Marzouq contends that Congress clearly waived sovereign immunity. Marzouq cites to the Seventh Circuit's opinion in *Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014) in support of his argument. In *Bormes*, the Seventh Circuit held that "what § 1681a(b) does is waive sovereign immunity for all requirements and remedies that another section authorizes against any 'person'." *Id.* at 796.

The Ninth Circuit disagreed with the Seventh Circuit in *Daniel v. Nat'l Park Serv.*, 891 F.3d 762 (9th Cir. 2018), holding that the FCRA does not contain an express waiver of sovereign immunity. Beginning its analysis "with the principle that our duty is 'to

5

construe statutes, not isolated provisions,'" the Court noted that it must "look to the provisions of the whole law to determine whether the FCRA's 'any person' language unambiguously applies to the federal government." *Id.* at 769. Reasoning that "[d]istilling a clear waiver of sovereign immunity in the FCRA would require us to treat 'the United States' as a 'person' in each provision," the Court held that the FCRA does not contain a clear waiver of sovereign immunity; such a waiver would lead to "patently absurd" results, such as "authorizing the Federal Trade Commission, the Consumer Financial Protection Bureau, and state governments to launch enforcement actions against the United States" and subjecting "the sovereign to incarceration." *Id.* at 768-74.

Following the Ninth Circuit, the Fourth Circuit recently held that Congress did not expressly waive sovereign immunity against civil liability in the FCRA. In *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799 (4th Cir. 2019), the Court held that there was no waiver because "[i]t is settled law that a waiver of sovereign immunity must be unambiguous and unequivocal" and "the purported waiver here [fell] well short of that standard." *Id.* at 800.

In analyzing whether the FCRA contains an express waiver of sovereign immunity against suits for damages, the Fourth Circuit first noted that "[t]here is a longstanding interpretive presumption that 'person' does not include the sovereign." *Id.* at 802 (citing *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000)). Notably, this interpretive presumption applies "even when 'person' is elsewhere defined by statute." *Id. See also Bond v. United States*, 572 U.S. 844, 861 (2014) ("In settling on a fair reading of a statute, it is not unusual to consider the ordinary meaning of a defined term,

particularly when there is dissonance between that ordinary meaning and the reach of the definition.").

The Fourth Circuit next noted that statutes waiving sovereign immunity are normally "quite clear." *Robinson*, 917 F.3d at 803. The Court cited to several statutes that use the words "United States" to clearly waive sovereign immunity, including the Little Tucker Act, the Federal Tort Claims Act, and the Clean Water Act. *Id*. Importantly, the Fourth Circuit noted that "when Congress means to waive sovereign immunity in a provision otherwise applying to persons it says so explicitly"; specifically, the Clean Water Act provides that "[a]ny citizen may commence a civil action on his own behalf . . . against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency . . .)." *Id*. (citing 33 U.S.C. § 1365(a)(1)).

The Fourth Circuit also pointed to the fact that the FCRA contains an explicit waiver of sovereign immunity elsewhere in its text. § 1681u provides: "Any agency or department of the United States obtaining or disclosing any consumer reports, records, or information contained therein in violation of [§ 1681u] is liable to the consumer to whom such consumer reports, records, or information relate. . . ." 15 U.S.C. § 1681u(j).

While Congress need not use "magic words" to waive sovereign immunity, the Fourth Circuit recognized that "courts are to 'presume congressional familiarity' with the need for waivers of sovereign immunity to be unambiguous and unequivocal." *Robinson*, 917 F.3d at 804 (citing *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992)). To this point, the Fourth Circuit found that the "stark contrasts between FCRA's civil liability provisions and recognized waivers serve as strong evidence that Congress did not waive sovereign immunity under FCRA." *Id*.

7

Finally, the Fourth Circuit—like the Ninth Circuit—examined the "awkward" results that a potential waiver would cause, principal among them being the "prospect of the government bringing criminal charges against itself." Because § 1681q authorizes criminal proceedings against "[a]ny person," the United States would be able to bring criminal charges against itself if Congress waived sovereign immunity based on the FCRA's definition of "person."

Further, treating the United States as a "person" for purposes of FCRA's enforcement provisions would allow states to bring damages actions against the federal government. The Fourth Circuit also noted that "[Plaintiff's] arguments equally would expose 'any government' to liability, including foreign, tribal, and state governments." *Id.* at 805.

In reaching its holding, the Fourth Circuit concluded that "[t]o read these broad and staggering implications into the statute on the slimmest of textual hints would be to abjure our duty to construe 'the statutory language with that conservatism which is appropriate in the case of a waiver of sovereign immunity.'" *Id.* (citing *United States v. Sherwood*, 312 U.S. 584, 590 (1941)). The Court further noted that "the statute bears no indicia of congressional intent to bring about such a bevy of implausible results, let alone an unambiguous and unequivocal intent to do so." *Id.*

This Court deems the reasoning of the Fourth and Ninth Circuits most persuasive. While the Seventh Circuit is correct in noting that the FCRA's general definition of "person" clearly encompasses the United States, whether Congress meant to subject the United States to FCRA's enforcement provisions is an entirely different question—and the answer is unclear at best. Additionally, the Seventh Circuit did not look at the

8

FCRA holistically; instead it focused on the definitional provision. This Court agrees with the Ninth Circuit's finding that the Seventh Circuit failed to consider, among other things, "the unparalleled enforcement regime created by its decision." *Daniel*, 891 F.3d at 774.

Given the "broad and staggering implications" that would follow treating the United States as a "person" for purposes of the FCRA's enforcement provisions—and the fact that other congressional waivers of sovereign immunity are far more lucid—this Court finds that there is no clear waiver of sovereign immunity in the FCRA; instead, Congress "legislate[d] on a sensitive topic inadvertently or without due deliberation" when it used "person" throughout the FCRA's enforcement provisions.

## V. CONCLUSION

Notwithstanding the FCRA's general definitional provision, it is unclear whether Congress intended to waive the United States' sovereign immunity against civil liability. Given the "unparalleled enforcement regime" that Marzouq's interpretation would create, Congress' intent is, at best, ambiguous; and any "ambiguities in the statutory language are to be construed in favor of immunity." *Cooper*, 566 U.S. at 290.

The Department's motion to dismiss is **GRANTED**.

 **IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: July 9, 2019

9